Joseph R. Von Kesler, Appellant, Freeman Boiler & Engineering Company, Intervenor, v. Daniel B. Scully, Jr. and Foreman-State Trust and Savings Bank, Appellees.

Gen. No. 35,795.

496

Opinion filed October 4, 1932.  Rehearing denied October 15, 1932.

BANGS, CRANE & SLATER, for appellant; MARTIN CRANE and ROBERT J. BURDETT, of counsel.

DICKINSON, SMITH, FARRELL & WHAM, for appellees; THOMAS E. D. BRADLEY and EDWARD J. FARRELL, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

On August 14, 1931, complainant, a judgment creditor of the defendant, Daniel B. Scully, Jr., in the sum of $1,503.10, filed a creditor's bill against both defendants in the circuit court of Cook county, in his own behalf and in behalf of such other judgment creditors of Scully, Jr., as might intervene in the proceeding and contribute to the expense thereof. On August 25, 1931, the Freeman Boiler & Engineering Co., a corporation, also a judgment creditor of Scully, Jr., in the amount of $1,329.09, was given leave to file and filed its intervening petition as a party complainant. During October, 1931, each defendant filed a general demurrer to complainant's bill, and on November 20, 1931, after argument had, the court sustained the demurrers, and, complainant electing to stand by his bill, dismissed it for want of equity. Complainant alone prosecutes the present appeal.

In the bill complainant alleged his recovery of a judgment against Scully, Jr., for $1,503.10, in June, 1930, in the municipal court of Chicago, the issuance of an execution thereon and the return of the execution unsatisfied, etc. He further alleged that at the time of the entry of the judgment Scully, Jr., was, and from thence hitherto has been, "the owner of a *vested remainder* in, or in some manner beneficially interested in, the estate of Daniel B. Scully, deceased, father of said defendant, and in the trust fund created by the last will of Scully, Sr., and in the property therein contained"; that Scully, Sr., died on August 8, 1922; and that his will was admitted to probate in the probate court of Cook county on September 8, 1922. (Copy of will attached and made a part of the bill.)

It is further alleged that by the will the testator, after the bequest of certain specific legacies, "devised and bequeathed all of the rest, residue and remainder

of his property to the State Bank of Chicago, in trust, upon certain uses and conditions''; that by the will it is provided that, at the expiration of 15 years from the date of the death of the testator, if Josie V. Scully (his wife) be then living, the trustee shall retain and hold out of and from said trust estate sufficient to provide a net income therefrom of $25,000 a year, during the life of said wife, which said net income shall be paid to her in monthly payments during her lifetime; that the balance of said original trust estate shall, at the expiration of 15 years from the date of the death of the testator, ''be distributed'' to certain of the testator's children therein named; that Scully, Jr., defendant herein, is thereby bequeathed one-seventh (1/7th) of said balance; that in the event of the death of Josie V. Scully *before* the expiration of 15 years from the date of the death of the testator, said trustee shall thereafter ''pay and distribute'' the entire net income from said trust estate to the children of the testator therein named, and in the proportions therein stated, and at the expiration of said 15-year period the entire trust estate of the testator shall be disbursed by the trustee to the children of the testator therein named, and in the proportions therein specified; that Scully, Jr., thereby is bequeathed one-seventh (1/7th) of the whole of the trust estate; that in the event of the death of Josie V. Scully *after* the expiration of said 15-year period from and after the date of the death of the testator, then said trustee shall dispose of that part of the trust estate, held by the trustee for the purpose of paying and distributing to her an annual net income of $25,000, to the children of the testator named in the will, and in the proportions therein specified; and that Scully, Jr., is therein and thereby bequeathed one-seventh (1/7th) of said portion of the trust fund.

It is further alleged that Josie V. Scully, widow of the testator, is now living; that the income from the

trust fund greatly exceeds the sum of $25,000 per annum, to wit, $100,000; that Scully, Jr., has heretofore been married and has issue who are now living; that said State Bank of Chicago, an Illinois banking corporation, named in the will as trustee of said trust fund, accepted the appointment and qualified as such, and took possession and assumed control of all the rest, residue and remainder of said estate and property, in accordance with the terms of said will; that said residue and remainder, so held in trust, is now of a market value in excess of $2,000,000; that the interest of Scully, Jr., therein is of ample value to pay complainant's said judgment and the judgments of such other judgment creditors as may join herein as parties; and that said State Bank has, since taking possession of the trust property, consolidated with the Foreman-State Trust & Savings Bank, an Illinois banking corporation, which last named corporation is now the duly qualified and acting trustee of said trust fund.

The prayer of the bill is, *inter alia,* that Scully, Jr., may be decreed to pay the amount due on complainant's judgment, and also the respective amounts due on judgments of the intervening petitioners who may join herein; that Scully, Jr., "may be decreed to apply for that purpose any money or property, real or personal, in law or equity, debts, choses in action, or equitable interests belonging to him, or held in trust for him, or in which he is in any manner beneficially interested, including said vested remainder in said trust fund"; that in default of such payment, the "said undivided one-seventh (1/7th) interest in the remainder" of said Scully, Jr., in the trust fund created by said will of Scully, Sr., "together with all his right, title and interest" in and to the property thereof, "be sold, as may be directed by the court," to satisfy the amount due to complainant and also to those who may have joined herein, etc.; that in case of such sale de-

fendants, and all persons claiming through or under them subsequent to the commencement of this suit, may be forever barred and foreclosed of all right and equity of redemption in said interest of said Scully, Jr., so sold; and that the defendant bank may be ordered by decree of this court to pay over and deliver to the purchaser at said sale, or those claiming through and under said purchaser but otherwise in accordance with the terms of said will, "the interest of said Scully, Jr., in said trust fund, and in the property thereof, and of said undivided one-seventh (1/7th) interest in the remainder therein." The bill also prayed for an injunction and for general relief.

The will, in addition to what is set forth in the bill, provides in paragraph eleventh (11th) that, in the event of the death of any of the testator's children leaving issue, "such issue shall take the parent's share *per stirpes* and not *per capita*," and that in the event of the death of any of the testator's said children leaving no issue him or her surviving, then "his or her share of my estate shall be divided among my then surviving children and the issue, if any, of any of my said children who shall have theretofore departed this life, if any, *per stirpes* and not *per capita*, but the distribution of income and principal shall be made at the times and in the manner herein provided." The fourteenth (14th) paragraph of the will is what may be termed a "spendthrift clause" and is as follows:

"I expressly direct that my said trustee shall pay all such income into the hands of each beneficiary, or if such beneficiary shall not have attained his or her majority, then to the duly constituted guardian of such minor beneficiary, and not upon any written or verbal order, nor upon any assignment or transfer by any such beneficiary; that no beneficiary herein shall have the right to sell, alien, pledge or assign his or her interest in said trust estate, or any part thereof, and no person shall acquire any right, title or interest of

any beneficiary in said trust estate by reason of any sale, assignment, transfer, claim or judgment against such beneficiary, whether voluntary or involuntary.''

In section 49 of our Chancery Act (Cahill's St. 1931, ch. 22, ¶ 49, p. 244) it is provided:

''Whenever an execution shall have been issued against the property of a defendant, on a judgment at law or in equity, and shall have been returned unsatisfied, in whole or in part, the party suing out such execution may file a bill in chancery against such defendant, and any other person, to compel the discovery of any property or thing in action, belonging to the defendant, and of any property, money, or thing in action due to him, *or held in trust for him,* and to prevent the transfer of any such property, money or thing in action, or the payment or delivery thereof to the defendant, *except* when such trust has, in good faith, been created by, or the fund so held in trust has proceeded from, some person other than the defendant himself. The court shall have power to compel such discovery, and to prevent such transfer, payment or delivery, and to decree satisfaction of the sum remaining due on such judgments, out of any personal property, money or things in action, belonging to the defendant, or held in trust for him, with the exception above stated, which shall be discovered by the proceedings in chancery, whether the same were originally liable to be taken in execution at law or not; . . .''

In urging that the court erred in sustaining the demurrers to complainant's bill and in dismissing the bill, complainant's counsel here contend in substance (1) that the interest of Scully, Jr. (the judgment debtor) under the terms of his father's will is ''an equitable, vested remainder—the legal title being vested in the trustee'' (defendant bank); (2) that such interest of Scully, Jr. may now be reached by a creditor's bill; and (3) that neither the exception contained in section 49 of the Chancery Act nor the spendthrift

clause in the father's will (paragraph 14th) "is a bar to complainant's subjecting this interest to the payment of his judgment." Defendants' counsel on the contrary contend in substance (1) that the interest of Scully, Jr., under the will is not a vested remainder; and (2) that even if said interest be considered as a vested remainder it cannot be reached now by a creditor's bill because (a) the provisions of the spendthrift clause of the will (paragraph 14th) are not void, under the Illinois decisions, as in restraint of alienation, and (b) the spendthrift trust created by the will is valid both as to the income and as to the corpus of the estate. In the reply brief of complainant's counsel, in discussing said spendthrift clause, they say:

"At the outset, the validity of the spendthrift provision here in question, insofar as it protects the income of the trust fund, *may well be admitted.* It is, however, vigorously contested that the benefit of that spendthrift clause extends to the vested, equitable *remainder* given the defendant Scully, Jr. It follows that, if the income is protected, the corpus may not be disturbed, nor the trust *disrupted* during its existence, by an action such as that brought here. The vested, equitable remainder, however, is *not* the *corpus,* but an *interest* in the corpus, which can be reached at this time, and in this manner, and sold to satisfy the judgment against said defendant, *without disturbing the trust.*"

As to complainant's counsels' first contention we are of the opinion that the interest of Scully, Jr., under the will is to be considered as a vested and not as a contingent remainder. (*Scofield v. Olcott,* 120 Ill. 362, 373; *Knight v. Pottgieser,* 176 Ill. 368, 374; *Pearson v. Hanson,* 230 Ill. 610, 616; *Nicol v. Morton,* 332 Ill. 533, 540–1.)

But we are of the opinion, because of said spendthrift clause, that the interest of Scully, Jr., under the will cannot be reached by the present creditor's bill

and that the spendthrift trust created by the will is valid both as to the income and as to the corpus of the estate. And we are unable to see how Scully, Jr.'s vested remainder interest in the corpus of the estate, while in the hands of the trustee, can be sold to satisfy complainant's judgment *without disturbing the trust*, as is contended by complainant's counsel. The term "spendthrift trust," as said in 26 Am. & Eng. Ency. Law, 2d Ed., p. 138, "is the term commonly applied to those trusts that are created with a view of providing a fund for the maintenance of another, and at the same time securing it against his own improvidence or incapacity for self-protection. The provisions against alienation of the trust fund by the voluntary act of the beneficiary, or *in invitum* by his creditors, are the usual incidents of such trusts." Such trusts have frequently been recognized by the decisions of our Supreme Court as constituting exceptions to the rule against restrictions on the alienation of vested estates. In one of the earlier cases, *Steib v. Whitehead,* 111 Ill. 247, it is said (pp. 250, 251, 252):

"That it was the intention of the testator to place the net income of the property beyond the control of his daughter and her creditors while in the hands of the trustee, is manifest, and we perceive no good reason, nor has any been suggested, why this intention should not be given effect. We fully recognize the general proposition that one cannot make an absolute gift or other disposition of property, particularly an estate in fee, and yet at the same time impose such restrictions and limitations upon its use and enjoyment as to defeat the object of the gift itself, for that would be, in effect, to give and not to give, in the same breath. Nor do we at all question the general principle that upon the absolute transfer of an estate, the grantor cannot, by any restrictions or limitations contained in the instrument of transfer, defeat or annul the legal consequences which the law annexes to the

estate thus transferred. . . . But while this unquestionably is true, it does not necessarily follow that a father may not, by will or otherwise, make such reasonable disposition of his property, when not required to meet any duty or obligation of his own, as will effectually secure to his child a competent support for life, and the most appropriate, if not the only, way of accomplishing such an object is through the medium of a trust. Yet a trust, however carefully guarded otherwise, would in many cases fall far short of the object of its creation, if the father, in such case, has no power to provide against the schemes of designing persons, as well as the improvidence of the child itself. If the beneficiary may anticipate the income, or absolutely sell or otherwise dispose of the equitable interest, it is evident the whole object of the settlor is liable to be defeated. . . .

"The creditors of the daughter have no ground to complain that they have been misled or wronged in consequence of the provision made for her by her father. It was his own bounty, and so far as they are concerned he had the right to dispose of it as he pleased. The property was not placed in her possession so that she might appear as owner when she was not, and thereby obtain credit. An examination of the public records would have shown that she had no power to sell or assign her equitable interest,—that the extent of her right was to receive the net accumulations of the trust estate from the hands of the trustee, and that these accumulations did not become absolutely hers, so as to render them subject to legal process for her debts, until actually paid to her."

In *Hopkinson v. Swaim,* 284 Ill. 11, it is said (p. 22): "Trusts whereby the income from property, real or personal, may be required to be paid to a beneficiary but shall be beyond his control and beyond the reach of his creditors while in the hands of the trustee may be created and will be sustained by the courts." (Cit-

ing the *Steib* case, *supra; Wagner v. Wagner,* 244 Ill. 101; *Broadway Nat. Bank v. Adams,* 133 Mass. 170; *Nichols v. Eaton,* 91 U. S. 716.) And it is further said (pp. 25, 26):

"It is argued that the attempted restraint on alienation is void because the children of William Swaim took a vested legal estate in fee under the will of James Swaim and the entire legal interest under the supposed trust for their lives, and that James Swaim, having devised the property in fee to his grandchildren, was powerless to impose any restraint on its alienation. It is true that as a general rule any limitation restraining an owner in fee simple from selling his land is bad, but it is said in *Johnson v. Preston,* 226 Ill. 447 (462), which is cited by the appellant's counsel, that there is an apparent exception to this rule where what is known as a spendthrift trust is created. The devise in that case was stated to bear no resemblance to a spendthrift trust, and it was therefore not decided there whether cases of that character were an exception to the general rule. In this case, however, active duties were imposed upon the trustees and the trust is a spendthrift trust. We have already seen that such trusts will be sustained and the restriction on alienation enforced during the life of a devisee for life. There is no reason for such a rule in the case of a life estate which does not apply equally to a fee during the life of the owner." (The court then quotes from the opinion in *Nichols v. Eaton,* 91 U. S. 716, at page 727.)

And we think that the contention of defendants' counsel (viz., that such a spendthrift trust as is disclosed in the present bill is valid both as to the income and as to the corpus of the estate) is also sustained by the holdings and decisions in the following cases: *Bennett v. Bennett,* 217 Ill. 434, 442, 444; *Wallace v. Foxwell,* 250 Ill. 616, 627, 629; *Congress Hotel Co. v. Martin,* 312 Ill. 318, 321, 322.

And we are also of the opinion that, because of the exception contained in section 49 of our Chancery Act, Cahill's St. ch. 22, ¶ 49, complainant's creditor's bill in the present case will not lie to reach any part of the trust fund or estate, as created by the will of Scully, Sr., so long as the same remains in the hands of the trustee, the defendant bank. (*Binns v. LaForge,* 191 Ill. 598, 607, 608.)

Our conclusion is that the circuit court did not err in sustaining the several general demurrers of defendants to complainant's bill. Accordingly, the decree appealed from, dismissing the bill for want of equity, is affirmed.

*Affirmed.*

KERNER, P. J., and SCANLAN, J., concur.