*591 OPINION OF THE COURT
Eli Wager, J.
This special proceeding pursuant to CPLR 5227 and 5205 (subd [d]) was submitted to the court for determination of the issues of law, after oral argument by counsel. There are no factual issues which require the taking of testimony; both parties have conceded that the matter is appropriate for submission and determination in this fashion. The precise issue of law, however, appears to be one of first impression in the courts of this State, and perhaps in the Nation.
The petitioner is a judgment creditor of one Martin J. Conlon, a retired pensioner of the respondent International Brotherhood of Electrical Workers Local No. 3. Pursuant to a prior order of this court dated October 14, 1977 (L. Kingsley Smith, J.), the Joint Industry Board of the Electrical Industry was added as a party respondent, since the joint board administrates the pension plans which are the subject of this proceeding.
Petitioner obtained a judgment against Conlon on June 30, 1969 in the amount of $1,478.10. Conlon is now entitled to receive pension benefits of $325 from the annuity plan of the electrical industry and $159 per month from the pension, hospitalization and benefit plan of the electrical industry. Petitioner’s application to this court is for an order pursuant to CPLR 5227 and 5205 (subd [d]) directing the respondent joint industry board to satisfy the judgment held by petitioner out of the monthly pension benefits paid to the judgment debtor, Conlon.
Respondents resist the petitioner’s application on the ground that New York State law in matters dealing with the pension funds under their jurisdiction has been pre-empted by the enactment of the Employee Retirement Income Security Act of 1974 (US Code, tit 29, § 1001 et seq.). Respondent further urged that this court is without power therefore to apply the CPLR to any covered pension fund since it is superseded by the Employee Retirement Income Security Act. Thus, the issue presented for determination is whether the pension funds held by the respondent for the benefit of the judgment debtor, Conlon, are immune from the enforcement proceedings contained in CPLR article 52.
The Employee Retirement Income Security Act of 1974 was adopted upon findings by the Congress that employee benefit *592 plans had proliferated; that the plans were national in scope and affected with a national public interest; that regulation, supervision and accountability to the employees whose security was to be provided for in these plans was either nonexistent or woefully inadequate; that many plans were unsound or unstable; that there had been defaults and terminations to the detriment of employees and their beneficiaries and "that it is therefore desirable in the interests of employees and their beneficiaries, for the protection of the revenue of the United States, and to provide for the free flow of commerce, that minimum standards be provided assuring the equitable character of such plans and their financial soundness.” (US Code, tit 29, § 1001, subd [a].) It is therefore the declared public policy of the act, inter alia, to require disclosure and reporting procedures and to establish standards of conduct, responsibility and obligations; to provide remedies and sanctions, etc. (US Code tit 29, § 1001, subd [b]); and to protect the interest of participants and beneficiaries "by improving the equitable character and the soundness of such plans”, etc. (US Code, tit 29, § 1001, subd [c].)
The essence of the Employee Retirement Income Security Act is the entry by the Federal Government into the burgeoning field of private pension plans after numerous scandals and defalcations occurred in which long-standing pension plans were found to be improperly funded, without supervision and wrongfully administered. As a consequence, employees who had anticipated benefits after many years of employment were found to be bereft of security prior to, or in their retirement. The overriding public interest in the future security of millions of employees propelled the Congress into this area of legislation.
There could be no question that in the area of regulation and supervision of pension plans covered by the Employee Retirement Income Security Act, the Federal Government has pre-empted State law, and that no State law adopted prior to the Employee Retirement Income Security Act, or thereafter, which is in conflict with the provisions of Federal law may stand. It is urged by the respondents that the attempted enforcement of the money judgment by the petitioner against Conlon herein is an intrusion upon an area pre-empted by the Federal Government into which this court may not venture. The argument is made therefore that CPLR article 52 is in conflict with the Employee Retirement Income Security Act *593 insofar as it attempts to enforce collection of a judgment out of the proceeds of a Federally regulated and supervised pension plan.
A number of Federal courts have examined and interpreted the extent of Federal pre-emption in this area. In Azzaro v Harnett (414 F Supp 473, affd 553 F2d 93, cert den 434 US 824 [Oct. 3, 1977]), the New York State Superintendent of Insurance was enjoined from acting to supervise the operation of a pension benefit plan after the enactment of the Employee Retirement Income Security Act, the court holding that only the Secretary of Labor had such powers.
In Wayne Chem. v Columbus Agency Serv. Corp. (426 F Supp 316, 321) the District Court concluded that, upon a determination that the plan in question was a covered Federal plan, "no state statute, regulation or common law rule, operating of its own force, may govern any aspect of this case”. The subject matter of that action was the termination of insurance coverage contained in an Employee Retirement Income Security Act based plan. In Hewlett-Packard Co. v Barnes (425 F Supp 1294) the Federal District Court prohibited the State of California from the regulation of health care service plans covered by the Employee Retirement Income Security Act based upon a determination of Federal pre-emption, holding: "When Congress exercises a granted power in a field which states have traditionally occupied, and unmistakably evinces its intent to exclude states from exerting their police power in that field, the federal legislation may displace state law under the Supremacy Clause. See Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142, 146-147, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963); Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 229-231, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).” (Hewlett-Packard Co. v Barnes, 1297, supra.)
In Wadsworth v Whaland (562 F2d 70), the First Circuit interpreted the Employee Retirement Income Security Act to exclude Federal pre-emption of group insurance policies from State regulation because of a specific exemption in section 514 of the Employee Retirement Income Security Act (US Code, tit 29, § 1144). However, the court declared that: "The legislative history manifests that Congress intended to preempt all state laws that relate to employee benefit plans and not just state laws which purport to regulate an area expressly covered by ERISA.” (Wadsworth v Whaland, supra, p 77.)
The statutory exclusion of insurance from the Employee *594 Retirement Income Security Act’s sweeping domination of the pension field, was further acknowledged in Bell v Employee Security Benefit Assn. (437 F Supp 382). There, the District Court discussed the explanatory statement of the Joint House and Senate Conference Committees which amplified the legislative intent behind section 514 of the act, holding: "In light of this legislative history, we conclude that federal preemption in the area of pensions and other employee benefit programs is virtually total.” (Bell v Employee Security Benefit Assn., supra, p 387.)
The thrust of all the Federal decisions dealing with the Employee Retirement Income Security Act clearly establishes Federal domination over the establishment, conduct, supervision and regulation of pension and retirement plans covered by the statute. We therefore accept the respondent’s contention that no State law may impinge upon the Federal jurisdiction, and to the extent that any State statute does so intrude, it would be invalid.
The issue thus presented for this court’s determination is whether New York State’s statute on the enforcement of money judgments is rendered impotent by the Employee Retirement Income Security Act, so as to prevent the collection of petitioner’s money judgment out of the pension benefits payable by the respondents to the judgment debtor, Conlon. We hold that it is not.
State and Federal law may co-exist where there is no expressed or implied intention by the Congress to prevent State action. In Simpson v Alaska State Comm. for Human Rights (423 F Supp 552), the Federal District Court for Alaska considered an apparent conflict between the Federal Age Discrimination in Employment Act of 1967, and an Alaska statute barring employment discrimination on the ground of age. In accepting Federal pre-emption of the subject matter, and in sustaining the validity of the State law as a complementary statute, the District Judge held (p 555): "Defendant next contends that the FADEA either partially or entirely preempts the state from legislating in the field of age discrimination. Preemption occurs when compliance with both federal and state regulations is physically impossible, the nature of the subject matter requires federal supremacy and uniformity, or Congress intended to displace state legislation. Florida Lime and Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-48, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963).”
*595 Further at page 556 the court held: "Generally conflicts in legislation should not be sought out where none exist. Joseph E. Seagram & Sons v. Hostetter, 384 U.S. 35, 45, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966). Where the statutes work in a complementary manner the case for preemption is weak. New York State Dept. of Social Services v. Dublino, 413 U.S. 405, 422, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973). Since there are no specific conflicts between the state and federal statutes and since Congress has expressly left the states the power to act in this field, the fact that Alaska has gone beyond the federal government in enacting a complementary scheme in this area does not make the Alaska law void. The Alaska law preceded the federal law by two years and nothing in the federal law indicates an intent to limit the Alaska statute.”
The Congress has not hesitated to proscribe in precise language those areas of State action which are impermissible intrusions into the Federal domain. In the area of veterans’ benefits, the Congress specifically provided that such payments were to be immune from attachment or execution. Subdivision (a) of section 3101 of title 38 of the United States Code provides, inter alia: "Payments of benefits due or to become due under any law administered by the Veterans’ Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.” Similarly, Social Security benefits are specifically exempt from attachment by explicit statutory language. Section 407 of title 42 of the United States Code provides: "The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law”.
This court has held, in a prior case, that the cited section of the Social Security Law prohibits State action to levy execution against such funds (Household Finance Corp. v Chase Manhattan Bank, 91 Misc 2d 141). Thus, it is evident that Congress was not reticent when considering the protection of funds payable to recipients under either the Veterans Benefits *596 Law (US Code, tit 38) or the Social Security Law. The Employee Retirement Income Security Act contains no comparable shield from creditors.
Respondents urge that section 206 of the Employee Retirement Income Security Act specifically prohibits the relief sought herein:
"(1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.
"(2) For the purposes of paragraph (1) of this subsection, there shall not be taken into account any voluntary and revocable assignment * * * or alienation of benefits executed before September 2, 1974.” (US Code, tit 29, § 1056, subd [d], pars 1, 2.)
Further, the Employee Retirement Income Security Act provides an amendment to the Internal Revenue Code, at section 1021: "(13) A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated. For purposes of the preceding sentence, there shall not be taken into account any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment made by any participant who is receiving benefits under the plan unless the assignment or alienation is made for purposes of defraying plan administration costs.” (US Code, tit 26, § 401, subd [a], par [13].)
The legislative intent of the Congress further illuminates the impact of these cited sections. The Joint House and Senate Conference Committee defined alienation as follows: "Conference Committee Joint Explanation — Alienation—Under the conference substitute, a plan must provide that benefits under the plan may not be assigned or alienated. However the plan may provide that after a benefit is in pay status, there may be a voluntary revocable assignment (not to exceed 10 percent of any benefit payment) by an employee which is not for purposes of defraying the administrative costs of the plan. For purposes of this rule, a garnishment or levy is not to be considered a voluntary assignment. Vested benefits may be used as collateral for reasonable loans from a plan, where the fiduciary requirements of the law are not violated.” (Emphasis added.)
Respondents argue further that the provision against "assignment or alienation” in section 206 is to be read as a ban on compulsory alienation or assignment, i.e., garnishment. *597 Nowhere in the statute itself or in the Joint Conference Committee explanation can such an intention be read or deduced. The intention of the Congress is clear in these sections — to prevent a voluntary disposition of more than 10% of the employee’s benefits. Since by its very nature (and by acknowledgment of the Joint Conference Committee), a garnishment or levy is not a voluntary assignment, the intent of the Congress is crystal clear. The limitation on voluntary alienation and assignment is for the purpose of preserving the integrity of at least 90% of the employees’ benefits.
We therefore conclude that our State statutes which provide for execution against the assets and/or income of judgment debtors to satisfy judgment creditors, do not conflict with, or impinge upon the Employee Retirement Income Security Act, which has not touched upon this peripheral issue.
Petitioner seeks, pursuant to CPLR 5227, to attach the benefit payments now payable to Conlon. "Upon a special proceeding commenced by the judgment creditor, against any person who it is shown is or will become indebted to the judgment debtor, the court may require such person to pay to the judgment creditor the debt upon maturity, or so much of it as is sufficient to satisfy the judgment, and to execute and deliver any document necessary to effect payment”.
Both the pension plan and the annuity plan have been submitted to the court. The plans are noncontributory and provide, inter alia: "The benefits payable to Participants or beneficiaries under this Plan cannot be assigned and shall not be liable to attachment, garnishment or other process, and shall not be taken, appropriated or applied by any legal or equitable process, or by operation of law, to pay any debt or liability of the Participant or of any beneficiary or next-of-kin who may have a right thereunder, either before or after payment.”
Respondents contend that the plans, by their terms, exempt the benefits from execution. Unfortunately for the judgment debtor, the language of the plans is not reflected in the Employee Retirement Income Security Act. Furthermore, it has long been the settled law of this State that clauses which seek to restrict or exempt trust funds from the reach of creditors are not effective (Sand v Beach, 270 NY 281).
In 1971 (pre-ERISA), Special Term, Nassau County, considered a declaratory judgment action against employer funded vacation funds held for the benefit of a judgment debtor. *598 Justice Bernard S. Meyer, in Laborers Union Local 1298 v Lyon & Sons (66 Misc 2d 1042, 1052), held that such funds were not beyond the reach of creditors, at least to the extent of 10% "and perhaps more” pursuant to the provisions of CPLR 5205 (subd [d], par 1) (then subd [e]).
At bar, the moneys held by the respondent for the benefit of the judgment debtor are in substance identical to the subject matter of the Laborers Union case. During the term of the trust, the funds contributed by the employers are exempt from attachment pursuant to the terms and provisions of CPLR 5205 (subd [c]). However, upon the termination of the trust, when benefits become due and payable to the judgment debtor, the character of the benefits so payable is "income or other payments from a trust the principal of which is exempt under subdivision (d)”; as to which 90% "is exempt from application to the satisfaction of a money judgment, except such part as a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his dependents:” (CPLR 5205, subd [d]; 5205, subd [d], par 1).
Accordingly, the petition of the National Bank of North America is granted to the extent that the respondent Joint Board of the Electrical Industry be directed to make payment to the petitioner out of the pension benefits payable by the respondent, to the judgment debtor Martin J. Conlon, in sums not to exceed 10% of the amount of each such payment made to Conlon until the petitioner’s judgment shall be fully satisfied.