CHRIST HOSPITAL, Plaintiff-Appellee, *v.* EMMANUEL GREENWALD, Defendant.—(MILK WAGON DRIVERS' AND MILK DEALERS' SEVERANCE RETIREMENT FUND, Garnishee-Appellant.)

First District (1st Division)   No. 79-1399

Opinion filed April 7, 1980.

John J. Coffey, III, and Daniel Cummings, both of Chicago (Rothschild, Barry & Myers, of counsel), for appellant.

Richard J. Puchalski, of Chicago (Puchalski, Keenan & Puchalski, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Christ Hospital (plaintiff) obtained a judgment for $1958.29 against Emmanuel Greenwald (defendant). Plaintiff then obtained judgment in garnishment proceedings against Milk Wagon Drivers' and Milk Dealers' Severance Retirement Fund (garnishee). The garnishee appeals.

The original judgment against defendant reflected medical and hospital services to defendant and members of his family. Thereafter defendant retired from employment and became a participant in the pension fund administered by the garnishee. Defendant received a pension of $275 per month. This stipend is the target of the garnishment proceedings.

In this court, the garnishee contends the spendthrift clause in the trust agreement prohibits garnishment of pension trust funds by a third-party creditor under the law of Illinois; and ERISA prohibits and preempts garnishment of the fund herein.

I.

The garnishee is a trust fund subject to the Employees Retirement Income Securities Act of 1974 (ERISA) (29 U.S.C.A. §1001 *et seq.* (1975)).

The trust fund is a qualified pension fund under the Internal Revenue Code, section 401. The fund is thus eligible for special tax benefits available to pension funds recognized under ERISA. The trust agreement under which the garnishee operates, which governs the payment of benefits to defendant, provides this spendthrift clause:

> "No benefit under the Plan shall be subject to anticipation or voluntary or involuntary alienation nor shall the interest of any person under the Plan be subject to garnishment, attachment, or other seizure or sequestration for the payment of any debts, judgments, alimony, or separate maintenance owed by said person."

This type of spendthrift clause, which is used to insulate insurance policy proceeds from third-party judgment creditors, has been held valid in Illinois. (*Roth v. Kaptowsky* (1946), 393 Ill. 484, 66 N.E.2d 664, *aff'd on remand* (1948), 401 Ill. 424.) Furthermore, in our opinion, the plaintiff's reliance upon the Illinois wage deduction act (Ill. Rev. Stat. 1977, ch. 62, par. 71 *et seq.*), as validating garnishment of payments from pension plans which include spendthrift clauses is inappropriate. The pension proceeds at issue in the instant case are not wages. Plaintiff must have been cognizant of this distinction when it elected to bring this proceeding under the garnishment statute applying to nonwage assets (Ill. Rev. Stat. 1977, ch. 62, pars. 33-52). We conclude the law of Illinois prohibits garnishment of the pension funds here involved.

## II.

The Congress has found and declared the policy of ERISA is "to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries * * * by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C.A. §1001(b).

In keeping with these goals, ERISA specifically prohibits the garnishment of the pension fund or the pension check of a retired person. The Act provides (29 U.S.C.A. §1056(d)(1)):

> "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."

The Act expressly permits "voluntary and revocable assignment[s] of not to exceed 10 percent of any benefit payment * * *." (29 U.S.C.A. §1056(d)(2).) Congress has specifically stated:

> "For purposes of this rule, a garnishment or levy is not to be considered a voluntary assignment."

H.R. Conf. Rep. No. 93—1280, 93d Cong. 2d Sess., reprinted in 1974 U.S. Code Cong. and Admin. News 4639, 5038, 5061, as cited in *Cody v.*

*Riecker* (E.D. N.Y. 1978), 454 F. Supp. 22, 24, *aff'd* (2d Cir. 1979), 594 F.2d 314.

Pension plans qualified under ERISA are afforded preferential *Federal tax treatment. The relevant Internal Revenue Service Regulations* provide (Treas. Reg. §1.401(a)-13(b)(1) (1978)):

"Under section 401(a)(13), a trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, *garnishment,* levy, execution or other legal or equitable process." (Emphasis added.)

As shown by the spendthrift clause above quoted, the garnishee has acted in accordance with these directions.

It is important to note the significance and binding force of these Internal Revenue Regulations. They "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes * * *." They "should not be overruled except for weighty reasons." *Bingler v. Johnson* (1969), 394 U.S. 741, 750, 22 L. Ed. 2d 695, 704, 89 S. Ct. 1439, 1445.

Thus, ERISA, its legislative history, and the interpretive tax regulations demonstrate garnishment of a qualified pension plan or its proceeds is prohibited under Federal law.

### III.

We next address the issue of whether ERISA and its accompanying Federal law preempts plaintiff's desired garnishment under the Illinois Non-Wage Garnishment Act. Under the supremacy clause (U.S. Const., art. VI), preemption is mandated whenever State action "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (*Hines v. Davidowitz* (1941), 312 U.S. 52, 67, 85 L. Ed. 581, 587, 61 S. Ct. 399, 404.) In the absence of a direct conflict between State and Federal law, preemption "depends on the intent of Congress." *Malone v. White Motor Corp.* (1978), 435 U.S. 497, 504, 55 L. Ed. 2d 443, 450, 98 S. Ct. 1185, 1190.

In ERISA, Congress has expressed with binding clarity a clear intent to achieve preemption. Section 514(a) (29 U.S.C.A. §1144(a)) states:

"Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975."

We need not restate here the extensive support for this provision found in the relevant legislative history which has been well detailed in

*Hewlett-Packard Co. v. Barnes* (N.D. Cal. 1977), 425 F. Supp. 1294, 1297-1300, *aff'd* (9th Cir. 1978), 571 F.2d 502, 504, *cert. denied* (1978), 439 U.S. 831, 58 L. Ed. 2d 125, 99 S. Ct. 108. After full consideration of the original House and Senate proposals, the Conference Committee report and statements made in the House and Senate debates, that court concluded (425 F. Supp. 1294, 1300):

> "Overall, the legislative history reveals both that Congress carefully considered the question of preemption, including the feasibility of enacting a more limited preemption provision, and that Congress ultimately enacted Section 514(a) with the express purpose of summarily preempting state regulation of ERISA-covered employee benefit plans. That the statute, standing alone or buttressed by its legislative history, was intended to supersede state regulation of benefit plans such as plaintiffs' is indisputable."

Other courts have agreed with this conclusion. See, *e.g., Bucyrus-Erie Co. v. Department of Industry, Labor and Human Relations* (7th Cir. 1979), 599 F.2d 205, 209; *Wayne Chemical, Inc. v. Columbus Agency Service Corp.* (N.D. Ind. 1977), 426 F. Supp. 316, 320, *aff'd as modified* (7th Cir. 1977), 567 F.2d 692; and *Azzaro v. Harnett* (S.D. N.Y. 1976), 414 F. Supp. 473, 474, *aff'd mem.* (2d Cir. 1977), 553 F.2d 93, *cert. denied* (1977), 434 U.S. 824, 54 L. Ed. 2d 82, 98 S. Ct. 71.

Plaintiff has cited one case which permitted invasion of a pension plan qualified under ERISA to satisfy a third-party judgment creditor. This authority is *National Bank of North America v. IBEW, Local No. 3* (1977), 93 Misc. 2d 596, 400 N.Y.S.2d 482. The court there permitted garnishment up to 10 percent of each pension payment. However, we prefer to follow more recent Federal decisions including *Cody v. Riecker*, affirmed by the Court of Appeals for the Second Circuit. In *Cody*, the District Court stated expressly (454 F. Supp. 22, 25):

> "The retirement funds are exempt from levy where the obligation arises not from the retiree's family relationship but from his acts with or towards third parties outside the family."

Plaintiff further urges a Federal statute may not preempt State regulation so as to prevent alienation or assignment of benefits to fulfill familial obligations. We reject this argument as regards its attempted application to the instant case. Federal statutes are generally drafted by Congress so as to avoid conflict with State domestic relations law. Thus Federal statutes are generally interpreted by courts "with the presumption that Congress did not intend to interfere with the operation of * * * state [domestic relations] law." *Stone v. Stone* (N.D. Cal. 1978), 450 F. Supp. 919, 924, citing *Ray v. Atlantic Richfield Co.* (1978), 435 U.S. 151, 55 L. Ed. 2d 179, 98 S. Ct. 988, and other cases.

"The basic purpose of ERISA is to protect the literally millions of

people who depend on benefits from private pension plans for financial independence after retirement." (See *Stone*, 450 F. Supp. 919, 926, and authorities there cited.) There should be and are strong policy reasons for insuring complete protection for income of this type.

On this basis we readily differentiate the cases cited by plaintiff which deal with obligations of marital property, child support or other aspects of State domestic relations laws as contrasted to attempted nonfamilial creditor invasions of an employee benefit plan qualified under ERISA. See, *e.g.*, *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 397 N.E.2d 511; *Cody*, 454 F. Supp. 22, *aff'd*, 594 F.2d 314; *Stone*, 450 F. Supp. 919, and cases cited therein.

We therefore hold that under the law of Illinois, applicable Federal law and preemption by ERISA, garnishment by a third-party nonfamilial creditor of pension installments paid by a qualified trust fund is prohibited.

For these reasons, the judgment appealed from is reversed, and the cause is remanded with directions that the garnishee be discharged.

Judgment reversed and cause remanded with directions.

McGLOON and CAMPBELL, JJ., concur.