**In re Gilbert CRENSHAW and Jacqueline Crenshaw, Debtors.**

**Bob J. RODGERS, as Trustee of the Estate of Gilbert Crenshaw and Jacqueline Crenshaw, Plaintiff-Appellee,**

**v.**

**Charles NORMAN, et al., Defendants-Appellants.**

**Bankruptcy No. 83–1888.**

**Civ. A. No. 84–AR–5793–NE.**

United States District Court, N.D. Alabama, Northeastern Division.

June 28, 1985.

Phillip A. Geddes, Decatur, Ala., for plaintiff-appellee.

**556**

Dow M. Perry, Jr., Philip Shanks, Jr., Jack Caddell, Decatur, Ala., for defendants-appellants.

## MEMORANDUM OPINION

ACKER, District Judge.

This is an appeal from the United States Bankruptcy Court for the Northern District of Alabama, which on September 11, 1984, 44 B.R. 30, found that one of two debtors' interest in his employers' retirement trust is property of the estate, and ordered the trustees to turn over the debtor's balance of $9,180.20 in the trust to the bankruptcy trustee. This order was modified on October 9, 1984, so as to reduce to $7,380.20 the balance to be turned over. By this appeal to this court both the debtors and the trustees of the retirement trust seek to have the order set aside. The question is close.

The pertinent facts are undisputed. Gilbert Crenshaw (Crenshaw) and his wife Jacqueline are in bankruptcy. Crenshaw has been employed by Automatic Screw Machine Products Company (ASMP) since 1965, and is a participant in ASMP's pension plan. The Crenshaws filed their bankruptcy petition under Chapter 7 on April 1, 1983, at which time Crenshaw had a vested interest of $9,180.20 in the plan. All contributions to the plan have been made by ASMP or have been derived from earnings on the plan's trust account. The plan expressly provides that the interest of a participating employee is inalienable and unleviable. The plan meets the requirements of 26 U.S.C. § 401, which is necessary to qualify a pension plan under the Employee Retirement Income Act of 1974 (ERISA). The bankruptcy trustee, fulfiling his fiduciary responsibilities, filed a complaint against the debtors and the trustees of Automatic Screw Machine Products Company Employees Retirement Trust for turnover of Crenshaw's interest in the plan. On these undisputed facts, the debtors, the bankruptcy trustee, and the trustees of the plan all filed motions for summary judgment, which resulted in the order in favor of the bankruptcy trustee from which this appeal is taken.

Appellants here contend that Crenshaw's interest in his retirement plan is excluded from property of the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). As a "fall back" position they contend that if such interest is part of the estate, then it is exempt under 11 U.S.C. § 522(b)(2)(A).

Under § 541(a)(1) all property in which a debtor has a legal or equitable interest at the time of bankruptcy comes into the estate. However, § 541(c)(2) recognizes an exception to this general rule by stating that "a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title".

■ In order to qualify under ERISA and thereby to receive preferred tax treatment, 26 U.S.C. § 401(a)(13) requires that a pension plan contain restrictions against assignment and alienation. However, these required restrictions do not in and of themselves bring a plan under § 541(c)(2) so as automatically to exclude the debtor's interest from his debtor's estate. *See, Matter of Goff*, 706 F.2d 574 (5th Cir.1983). While this statutory requirement for ERISA qualification may be important, the court must nonetheless look beyond this question and consider the overall nature of the plan, including its other characteristics, particularly the extent of dominion and control which the debtor has over the plan's assets.

■ The Eleventh Circuit very recently held in *In re Lichstrahl*, 750 F.2d 1488, 1490 (1985), that the term "applicable non-bankruptcy law", as used in § 541(c)(2), refers only to state spendthrift trust law. Therefore, ERISA-qualifying pension plans, necessarily containing anti-alienation provisions, are excluded from the bankruptcy estate pursuant to § 541(c)(2) *only if they are enforceable under state law as spendthrift trusts*. Thus, the question which this court must answer is whether or not the ASMP pension plan qualifies as a

spendthrift trust under state law. In deciding this question the court finds that the proper state law to be applied is that of Illinois. Several factors lead the court to this conclusion. First, the plan was executed in Illinois. Second, ASMP is headquartered in Illinois. Third, the plan itself provides in Article XIV § 14.3 that "this plan and trust shall be construed according to the laws of the jurisdiction of Illinois". Lastly, the court notes that none of the parties seem to argue that Illinois law is not applicable.

Illinois courts have recognized the enforceability of spendthrift trusts. *VonKesler v. Scully*, 267 Ill.App. 495 (1932). *Danning v. Lederer*, 232 F.2d 610 (7th Cir. 1956). They have not, however, specifically addressed whether or not a pension plan containing the same language and provisions as the ASMP plan qualifies as a spendthrift trust. The court must therefore deduce the Illinois law from other cases.

In *Christ Hospital v. Greenwald*, 82 Ill. App.3d 1024, 38 Ill.Dec. 469, 403 N.E.2d 700 (1980), the court held that under Illinois law a third-party nonfamilial creditor of a person receiving pension installments paid by a qualified trust fund cannot garnish the installments. The court shed light on Illinois' basic approach to ERISA plans when it stated that the purpose of ERISA is to protect those who depend on benefits from private pension plans and to help to assure financial independence after retirement. It went on to say that there are strong policy reasons for insuring complete protection for income of this type. This rationale for protection against creditors applies equally as well to creditors in a bankruptcy proceeding. Shortly after *Greenwald*, the Appellate Court of Illinois decided a similar case involving an ERISA pension plan. The court there held in *Peoples Finance Company v. Saffold*, 83 Ill. App.3d 120, 38 Ill.Dec. 534, 403 N.E.2d 765 (1980), that the pension plan there created a fund in the nature of a trust for the benefit of the debtor and that the benefits due the debtor under the plan were not subject to wage deduction or to garnishment. While both *Greenwald* and *Saffold* are not absolutely controlling inasmuch as they do not involve Chapter 7 bankruptcy proceedings they are instructive because they give considerable insight into the attitude of the Illinois courts toward ERISA plans.

■ In *DiPiazza v. Metropolitan Life Insurance Company*, 29 B.R. 916 (Bktcy. N.D.Ill.1983), a bankruptcy court in Illinois was presented with a situation analogous to the instant one. The Chapter 7 debtor, DiPiazza, participated in his employer's ERISA pension plan, as well as in a profit-sharing plan, and voluntarily contributed $2,000 to the pension fund. He had the right to withdraw, at any time, his contribution, plus 5% accumulated interest. However, early withdrawal would result in forfeiture of the deferred retirement benefits contributed by the employer. In determining whether or not this plan was a spendthrift trust under Illinois law, the *DiPiazza* court, recognizing that there were no Illinois cases directly on point, utilized two primary criteria: (1) the type of relief which the debtor seeks in bankruptcy; and (2) the extent of the debtor's dominion and control over the corpus of the ERISA plan. In focusing on the second aspect, the court found that while the debtor would forfeit some of the plan benefits by demanding access to the trust corpus, he nonetheless was able to withdraw *at any time*. The bankruptcy court held that since the debtor could reach the pension plan contributions whenever he wanted, the plan did not comport with a true spendthrift trust's prohibition against voluntary alienation of any part of the trust's corpus, and thus could not be a spendthrift trust under Illinois law.

This court agrees with the rationale employed in *DiPiazza*, but at the same time recognizes important factual differences which distinguish it from Crenshaw's situation. First, DiPiazza contributed a large amount of money to his pension plan. Second, he had an unfettered right to reach his contributions. While he would forfeit some

of the benefits by taking such action, the fact of his absolute right to withdraw the funds cannot be overlooked or down played. It was the predominant fact in *DiPiazza*. In the instant case, Crenshaw not only has not made any contributions to the ASMP plan, but there is no way that he alone can reach the trust corpus. In order to withdraw funds while still employed by ASMP, or to receive funds upon termination, Crenshaw must obtain the cooperation of the plan's trustees. He *does not* have guaranteed access to the funds. He cannot reach the trust without his employer's permission. Thus, *DiPiazza* loses its persuasive effect in Crenshaw's case.

The Fourth Circuit very recently had to decide whether or not an ERISA pension plan was a valid spendthrift trust under Illinois law. *In re McLean*, 762 F.2d 1204 (4th Cir.1985), was an appeal from a district court judgment upholding the bankruptcy court's order that Central States Pension Fund pay to the trustee of a debtor's Chapter 13 plan certain pension funds due the debtor. While this court recognizes that *McLean* involved a different type of bankruptcy proceeding, the approach which the Fourth Circuit took in determining the pension plan's validity as a spendthrift trust is enlightening. The Fourth Circuit said:

> Contributions to the Central Fund are made only by employers and the employees have no power to revoke the trust and reach its corpus. Public policy concerns would not therefore prevent enforcement of this restriction under controlling nonbankruptcy state [Illinois] law.

726 F.2d, at 1207.

*McLean*, decided after the bankruptcy court had entered its order as to the ASMP proceeds in this case, adopts the holding of *In re Kwaak*, 42 B.R. 599 (Bktcy.D.Maine 1984), which this court also finds persuasive. *Kwaak* concerned a Chapter 7 debtor's interest in an employer-financed stock bonus and profit-sharing retirement trust under ERISA. The plan did not allow withdrawals, except upon the employee's death, termination, disability or upon the termination of the plan. All deposits to the trust were made by the employer, and the plan involved no active participation by the employee. He had no control over his benefits. Based on these characteristics, the court in Maine held that the trust benefits were excludable from the estate as a spendthrift trust.

In the trust before this court, however, the beneficiary cannot withdraw funds, deposit funds, borrow against his interest, or manage the deposits in any way. These characteristics encourage the finding that the plan creates a spendthrift trust under state law. The debtor is the beneficiary for whom a trust has been designated by the employer-settlor, who has attempted to protect the debtor from his own improvidence by retaining control over the assets. *See In re Goff, supra*. As a result of its being analogous to a state law spendthrift trust, the plan is excluded from the estate by section 541(c)(2) of the Bankruptcy Code. 42 B.R. at 602.

This court takes particular note that the trust provisions in *Kwaak* allowing for withdrawal upon termination did not keep the trust from being a "spendthrift trust" in Maine. This court can find no material distinctions between spendthrift trusts in Maine and spendthrift trusts in Illinois.

The bankruptcy court in the instant case relied upon the holding of the Eighth Circuit in *In re Graham*, 726 F.2d 1268 (1984). This court realizes that the language of the *Graham* plan is similar to that of ASMP in that both plans include a provision that allows for distribution of benefits upon termination. The clause in *Graham* stated:

> Upon termination of a participant's employment prior to attaining Normal Retirement Age (for any reason other than death or disability), the Advisory Committee, in its sole discretion, may direct the Trustee to pay the Participant his nonforfeitable Accrued Benefit.

*In re Graham*, 24 B.R. 305, 307 (1982), aff'd, 726 F.2d 1268 (8th Cir.1984).

The ASMP plan contains the following pertinent provisions:

## ARTICLE VII

*Withdrawals Prior to Termination of Employment*

7.1 A Participant who has become vested in any portion of his account in accordance with Article VI hereof may, at any time prior to the distribution of his account, *and with consent of the Employer*, request the withdrawal of a cash amount equal to a specified portion of his vested account ...

7.2 The Participant's request to withdraw must be in writing to the Employer and *shall be subject to the consent of the Employer ... The basis for the Employer consenting to or refusing to consent to the Participant's request shall be that of demonstrated financial need of the Participant related to the health, education or welfare of the Participant or of his dependents.*

## ARTICLE IX

*Termination of Employment*

9.2. If the Participant's employment with the Employer is terminated in accordance with Section 9.1 of the Article [prior to employee's normal retirement date by reason other than his total disability or death], the Participant may make a written request to the Employer for distribution of ... his vested interest ... *Subject to the consent of the Employer,* granted or denied to all Participants in a non-discriminatory manner, payment of such benefits shall be made ... (emphasis supplied).

Although both the *Graham* plan and the ASMP plan recognize circumstances in which the debtor can obtain benefits prior to retirement, death or disability, this court cannot read *Graham* to mean that inclusion of such a clause automatically renders the prospective plan benefits includable in the debtor's estate. The crucial and distinguishing factor in *Graham* is that the "Advisory Committee" mentioned in its termination provision was composed of the corporation's board of directors, while the debtor, as the sole director, was the sole member of the "Advisory Committee". It

was not this provision *per se* which the Eighth Circuit found to make the trust proceeds includable, but the fact that, as a practical matter, Graham had full dominion and control over the assets of the plan. Here, the situation is markedly different. Crenshaw is only one of numerous employees (according to the uncontradicted affidavit of Charles Norman filed with the bankruptcy court on September 23, 1983, ASMP has approximately 99 employees) who work in ASMP's Decatur, Alabama, plant, distant from the company's headquarters in Illinois. For aught appearing, he does not participate in managing the company's employee benfit programs and does not have any right to participate in any decision as to what, if anything, he can receive from the pension plan upon termination. As the plan itself states, Crenshaw cannot withdraw funds before termination and cannot receive vested funds even after termination without his employer's consent. This is a plan which may qualify under ERISA, but in which the employer maintains the maximum of control.

This court acknowledges that *Graham* assumes all ERISA plans to be part of the bankruptcy estate. 726 F.2d at 1272. However, as previously stated, the Eleventh Circuit has recently and expressly found that such plans are *excluded* from the debtor's estate *if they are enforceable under state law as spendthrift trusts. Lichstrahl,* 750 F.2d at 1490. This court not only agrees with the Eleventh Circuit, but it is bound to follow the Eleventh Circuit. *Lichstrahl* was not available to the bankruptcy court when it made its decision. This may explain its decision. It is available to this court.

The bankruptcy court further relied upon *Matter of Goff,* 706 F.2d 574 (5th Cir.1983), and upon *Matter of Johnson,* 724 F.2d 1138 (5th Cir.1984), for two propositions: (1) that Congress specifically intended that only traditional spendthrift trusts enforceable under state law are to be excluded; and (2) that ERISA-qualification does not necessarily make a trust into a traditional spendthrift trust. This court does not believe

that these concepts require the result which the bankruptcy court reached on the instant set of facts. *Goff* and *Johnson* may *limit* the applicability of the § 541(b), (c) exclusion to ERISA plans, but *they do not preclude it.*

 Appellee, the bankruptcy trustee, has cited numerous cases in which ERISA plans were held not to be spendthrift trusts, but each contains facts which distinguish it from the case at hand. The court cannot quarrel with the proposition that ERISA plans do not automatically qualify as spendthrift trusts. Instead the question is whether or not this particular pension trust qualifies. From analyzing the existing cases this court is of the opinion that the single most crucial factor in qualifying as a spendthrift trust is the degree of dominion and control the debtor has over the trust, and that factor here overwhelmingly militates in favor of excludability.

Somewhat reluctantly, appellee contends that Crenshaw has an unqualified right to receive pension plan benefits at his request. This is probably for the reason that appellee recognizes the need for such a contention. However, this contention can be no more than wishful thinking. While nothing can prevent Crenshaw from *requesting* benefits, this is *not* the same as the unqualified right to *receive* benefits. "Asking" is not always "receiving". The right to ask for benefits is not dominion and control over a trust to the extent of removing it from the realm of a spendthrift provision. This limited right cannot be construed to override the basic nature of the trust, which removes the trust funds from the debtor's control, and hence from his creditors' reach.

As its ultimate conclusion the court finds that the ASMP plan constitutes a spendthrift trust under the law of Illinois and so is excludable under § 541(c)(2). ERISA protection against a creditor's reaching of pension plan benefits is based on sound public policy. It is consistent with the concept of "fresh start" in Chapter 7 bankruptcy, as well as with the preservation of trusts over which the debtor has no domin-

ion and control. The purpose for which ASMP's retirement trust was created would be circumvented or nullified if these funds are included in Crenshaw's bankruptcy estate, and thus the order of the bankruptcy court requiring turnover of these funds is due to be reversed.

Since the court finds that the ASMP pension trust qualifies as a spendthrift trust under Illinois law so that Crenshaw's benefits from that trust are excluded from his bankruptcy estate, the court does not reach the issue of the qualification of ERISA plans for exemption under § 522(b)(2)(A). Likewise, it is not appropriate for the court to comment on the possible tax ramifications which may result from the inclusion or exclusion of ERISA plans in debtors' estates, or on the effect that requiring a company to turn over pension assets may have on its ERISA qualification. These issues will remain for another case unless the Eleventh Circuit should disagree with this court and agree with the bankruptcy court.

An appropriate order will be entered.