In re Albert DI PIAZZA, Jr., Debtor.

Jeffrey S. FIRESTONE, as
Trustee, Plaintiff,

v.

METROPOLITAN LIFE INSURANCE
COMPANY, Defendant.

Jeffrey S. FIRESTONE, as
Trustee, Plaintiff,

v.

FIRST JERSEY NATIONAL BANK, Metropolitan Life Insurance Company, Albert Di Piazza, Jr., and NL Industries, Inc., Defendants.

Nos. 82 A 0199, 82 A 0198 and 81
B 12828.

United States Bankruptcy Court,
N.D. Illinois, E.D.

May 13, 1983.

Jeffrey S. Firestone, Chicago, Ill., for plaintiff.

J. Calvin Daulton, III, Joseph J. Hasman, Peterson, Ross, Schlorb & Seidel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

FREDERICK J. HERTZ, Bankruptcy Judge.

This controversy involves two interrelated complaints. With the consent of the parties and by order of this court, the complaints were consolidated to further judicial economy.

On October 16, 1981, Albert Di Piazza, Jr. (hereinafter referred to as debtor) filed a petition under Chapter 7 of the Bankruptcy Code. Jeffrey Firestone (hereinafter referred to as Trustee) was appointed as Interim Trustee. The debtor was formerly employed by NL Industries, Inc. On March 1, 1974, the debtor's employment with NL Industries was terminated.

During the course of debtor's employment with NL Industries, he participated in both a pension plan and profit-sharing plan. Metropolitan Life Insurance Company (hereinafter referred to as Metropolitan) administers the pension plan. The Trustee alleges that the debtor, during the course of his employment with NL Industries, contributed $2,000.00 into this pension plan. First Jersey National Bank (hereinafter referred to as FJNB), is trustee of the trust that administers the funds of the profit-sharing plan. The Trustee alleges that the debtor has a right to approximately $5,271.63 under the terms of the profit-sharing plan.

The parties agree that both the profit-sharing plan and the pension plan satisfy the requirements of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (1979) (hereinafter referred to as ERISA). The parties further agree that the plans are qualified for tax purposes under Section 401(a) of the Internal Revenue Code, 26 U.S.C. § 401 (1979).

ERISA Section 1056(d) and Internal Revenue Code Section 401(a)(13) require a retirement plan to contain an anti-alienation and assignment clause in order to maintain its qualified status for tax purposes. The favorable tax treatment granted by ERISA allows an employee to deduct contributions made to the plan from his gross income on his Federal Income Tax Return in the year of contribution. Thus, an employee can defer income earned under a qualified plan until the corpus of the plan is withdrawn. Noncompliance with the anti-alienation requirements results in a forfeiture of the favorable tax treatment. Consequently, an employee's incentive to contribute to a retirement plan would be eliminated. Each of the plans involved in this controversy contain the necessary anti-alienation clauses.[1]

Metropolitan, FJNB, and NL Industries allege that the debtor, who is currently 56 years old, wishes to defer his right to draw from both plans until he reaches the age of 65. At that time, under the terms of the plans, the debtor would periodically receive payments based upon his past contributions. The parties to this suit agree that the debtor's interests in both plans are fully vested.

The Trustee brought an amended complaint, pursuant to court order, joining the debtor, NL Industries, Metropolitan, and FJNB as defendants (hereinafter referred to as the defendants). The Trustee seeks to

---

1. The pension plan contains the following restriction on alienation and assignment clause:

   Except as any of the following provisions may be contrary to the law of any state having jurisdiction in the premises, no Participant, Contingent Member, or Beneficiary shall have the right to assign, transfer, hypothecate, encumber, commute or anticipate his interest in any payments under this Plan, and such payments shall not in any way be subject to any legal process to levy upon or attach the same for payment of any claim against any Participant, Contingent Member, or Beneficiary.

   The profit-sharing plan contains a substantially similar clause.

918

have the debtor's interest in the ERISA plans turned over to the estate pursuant to Section 541(a) of the Bankruptcy Code, 11 U.S.C. § 541(a) (Supp. IV 1980). The defendants have countered by bringing a motion to dismiss the amended complaint. The defendants base their motion for dismissal on two alternative sections of the Bankruptcy Code, Sections 541(c)(2) and 522(b).

Consequently, this court must determine two issues: (1) whether Section 541(c)(2) excepts the ERISA plans from being property of the debtor's estate, and (2) if the ERISA plans are property of the debtor's estate, whether Section 522(b) exempts all, or a portion of, the debtor's interest in the plans.

The Bankruptcy Code defines property of the debtor's estate as "all legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a)(1). The Bankruptcy Code further provides that a debtor's interest in property becomes property of the estate "notwithstanding any provision . . . that restricts or conditions transfer of such interest by the debtor . . . ." Id. § 541(c)(1)(A). Section 541 replaced former Section 70(a)(5) of the Bankruptcy Act. Under former Section 70(a)(5), it was necessary to determine whether, under the applicable state law, the debtor's personal property had been "transferred or . . . levied upon and sold under judicial process," or could have been "otherwise sized, impounded, or sequestered," at the time the petition was filed. See 4 Collier on Bankruptcy ¶ 541.08, at 541–38 (15th ed. 1982).

Thus, the Code broadens what is included in the bankruptcy estate by eliminating Act concepts of leviability, transferability, vested title and fresh start. See Rendleman, Liquidation Bankruptcy Under the '78 Code, 21 Wm. & Mary L.Rev. 575, 594–95 (1980). See also 4 Collier on Bankruptcy, ¶ 541–22, at 541–84 (15th Ed.1982). ("Section 541(c)(1) further emphasizes the increased independence of the Code from nonbankruptcy law concerning property of the estate"). Section 541(a)(1) reflects the congressional intent to include all property

of the debtor in the estate (even property necessary for a fresh start). S.Rep. No. 989, 95th Cong., 2d Sess. 82, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5868.

Against this general background, the defendants argue that Section 541(c)(2) excepts both plans from being included as property of the estate. Section 541(c)(2) provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable under a case under this title." 11 U.S.C. § 541(c)(2) (Supp. IV 1980).

■ The Legislative History pertaining to Section 541(c)(2) reveals that this provision was intended to cover spendthrift trusts. See H.R.Rep. No. 595, 95th Cong., 2d Sess. 369, reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6325 ("Paragraph (2) of subsection (c), however, preserves restrictions on transfer of a spendthrift trust to the extent that the restriction is enforceable under applicable nonbankruptcy law."). See also S.Rep. No. 989, 95th Cong., 2d Sess. 83, reprinted in 1978 U.S.Code Cong. & Ad. News 5787, 5809. Under the Bankruptcy Code, it is well-settled that a debtor's interest in a valid spendthrift trust is not to be included as property of the estate. In re Wood, 23 B.R. 552, 555 (Bkrtcy.E.D.Tenn. 1982); In re Kelleher, 12 B.R. 896, 897 (Bkrtcy.M.D.Fla.1981).

■ The defendants argue that since qualified ERISA plans must contain anti-alienation provisions, ERISA plans constitute a type of spendthrift trust which Section 541(c)(2) explicitly excepts from inclusion into the estate. Since the plans in this suit are qualified under the terms of ERISA, the defendants conclude that the Trustee's complaint for turnover should be dismissed.

■ This court must examine Illinois law to determine if ERISA plans are spendthrift trusts. In re Witlin, 640 F.2d 661, 663 (5th Cir.1981); In re Klayer, 20 B.R. 270, 272 (Bkrtcy.W.D.Ky.1981). Generally, a spendthrift trust is a trust created in order to provide a fund for maintenance of

another, while protecting the fund against the intended beneficiary's improvidence or incapacity. *Newcomb v. Masters,* 287 Ill. 26, 32, 122 N.E. 85, 87 (1919); *Von Kesler v. Scully,* 267 Ill.App. 495, 503 (1st Dist.1932). "The provisions against alienation of the trust fund by the voluntary act of the beneficiary, or *in invitum* by his creditors, are usual incidents of such trusts." *Von Kesler,* 267 Ill.App. at 503. Cognizant of the above principles, this court has been unable to find any Illinois case law which directly addresses the issue of whether an ERISA plan is to be considered in the nature of a spendthrift trust as contemplated by the drafters of the Code under Section 541(c)(2).

Defendants cite two recent Illinois Appellate Court cases to support their position that a bankruptcy trustee cannot reach a participant's interest in a qualified ERISA plan. *See Peoples Finance Company v. Saffold,* 83 Ill.App.3d 120, 38 Ill.Dec. 534, 403 N.E.2d 765 (3d Dist.1980); *Christ Hospital v. Greenwald,* 82 Ill.App.3d 1024, 38 Ill.Dec. 469, 403 N.E.2d 700 (1st Dist.1980). This court finds that neither *Saffold* or *Greenwald* is applicable to the present situation. In both *Saffold* and *Greenwald,* the issue was whether a judgment creditor could garnish a debtor's pension plan receipts. Both courts held that the ERISA anti-alienation provisions preempted the Illinois garnishment statute by virtue of ERISA Section 1144(a). *Saffold,* 83 Ill.App.3d at 124, 38 Ill.Dec. at 537, 403 N.E.2d at 768; *Greenwald,* 82 Ill.App.3d at 1028, 38 Ill.Dec. at 473, 403 N.E.2d at 704.

The present controversy is factually distinguishable from both *Saffold* and *Greenwald.* Here, a trustee is seeking turnover of a debtor's interests in two ERISA plans pursuant to provisions of the Bankruptcy Code. The Supreme Court of the United States in *Kokoszka v. Belford,* 417 U.S. 642, 651, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974), explicitly stated that a trustee's right to seek turnover of a debtor's property is distinguishable from a creditor's garnishment proceeding.[2] Consequently, neither Saffold or Greenwald is of precedential value for determination of the present controversy. Since Illinois case law has not addressed the issue, this court must refer to the relevant Legislative History and case law of other jurisdictions to aid in determining whether a debtor's interest in a qualified ERISA plan conforms to the requirements of Section 541(c)(2) and thus is not to be considered as property of the estate under Section 541(a)(1).

Congress enacted ERISA to "establish a comprehensive federal regulatory scheme designed to protect the growing number of employees who were participating in private pension plans." *In re Parker,* 473 F.Supp. 746, 750 (W.D.N.Y.1979). The purposes of the legislation were described as follows in the House Report:

> One of the most important matters of public policy facing the nation today is how to assure that individuals who have spent their careers in useful and socially productive work will have adequate incomes to meet their needs when they retire. This legislation is concerned with improving the fairness and effectiveness of qualified retirement plans in their vital role of providing retirement income.

H.Rep. No. 807, 93rd Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Ad. News, pp. 4639, 4670, 4676.

In determining whether qualified ERISA plans should be considered as property of the estate, one must also look to the purposes of the Bankruptcy Code. *See Segal v.*

---

**2.** *Kokoszka* dealt with the issue of whether a tax refund was to be considered as property of the estate under Section 70(a)(5) of the Bankruptcy Act. The Court first addressed the issue of whether a tax refund was property of the estate. The court held that a tax refund was sufficiently rooted in the pre-bankruptcy past so as to constitute property under Section 70(a)(5). The debtor then argued that 75% of his refund was exempt pursuant to the Con-

sumer Credit Protection Act, which allowed a creditor to garnish only 25% of a debtor's wages. The Court rejected this prong of the debtor's argument, stating in part that there were different concepts behind bankruptcy and garnishment. Garnishment law was enacted to prevent bankruptcy. Once a bankruptcy petition was filed, different considerations prevailed. *Id.* at 650–51, 94 S.Ct. at 2436.

*Rochelle,* 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966) (In determining whether a tax loss carryback was property of the estate, the Court stated that the purposes of the Bankruptcy Act "must ultimately govern.").

The twofold purpose of the Bankruptcy Code is similar to the purpose of the prior Bankruptcy Act. These two conflicting goals were stated by the Supreme Court in *Burlingham v. Crouse,* 228 U.S. 459, 33 S.Ct. 564, 57 L.Ed. 920 (1913): "It is the twofold purpose of the Bankruptcy Act to convert the estate of the bankrupt into cash and distribute it among creditors and then to give the bankrupt a fresh start with such exemptions and rights as the statute left untouched." *Id.* at 473, 33 S.Ct. at 568. Consequently, in order to resolve the present controversy, this court must balance the conflicting aims and purposes of the Bankruptcy Code with those of ERISA.

While the case law addressing the ERISA issue has not been uniform, the courts have utilized two major criteria. The first criterion is the type of relief the debtor has sought under the Code. The Chapter 13 concept of property seems to be more expansive than the Chapter 7 concept of property. *See Regan v. Ross,* 691 F.2d 81, 85 (2d Cir.1982) (The Court noted that Congress explicitly expanded the coverage of Chapter 13 to include pension and welfare recipients who would otherwise be forced to file straight bankruptcy petitions. This was one of the principles the court used to find that benefits under a New York state employment retirement system were not excepted by Section 541(c)(2) from inclusion into the estate. Moreover, this result was reached despite the presence of an ERISA anti-alienation clause).

The idea that the Chapter 13 concept of property is more expansive than that of Chapter 7 is also borne out by decisions reached in other jurisdictions. *See In re Dawson,* 13 B.R. 107, 109 (Bkrtcy.M.D.Ala. 1981) (state disability benefits part of Chapter 13 debtor's estate); *In re Howell,* 4 B.R. 102, 106–7 (Bkrtcy.M.D.Tenn. 1980) (payments under Federal Employee's Compen-

sation Act); *In re Buren,* 6 B.R. 744, 746–47 (Bkrtcy.M.D.Tenn.1980) (payments under Social Security Act).

The rationale behind this more expansive reading of property in Chapter 13 cases is premised on several notions. First, a proceeding under Chapter 13 is in contemplation of a "continuing process of financial rehabilitation of the debtor, rather than a static and isolated transfer of assets from the estate of the debtor to his creditors." *In re Wood,* 23 B.R. 552, 554 (Bkrtcy.E.D. Tenn.1982).

Second, the concept of fresh start in a Chapter 7 case is essentially different from the same concept in a Chapter 13 case. In a Chapter 7 case, the debtor receives a fresh start by the immediate extinguishment of debts incurred prior to the filing of the petition in bankruptcy. *Id.* at 558. All income received thereafter is immune from the claim of creditors, providing there is no close nexus with the pre-bankruptcy period. In a Chapter 13 case, however, the debtor does not receive a fresh start until after the completion of his plan, which entails the payment of post-bankruptcy income to satisfy listed creditors.

The above factors must be weighed against the extent of dominion and control a debtor has over the corpus of an ERISA plan. The debtor's dominion and control is the second important criterion used in ERISA cases. KEOGH plans, under which a participant has a complete right of withdrawal over corpus, have been held to be property of the estate pursuant to Section 541(a)(1) despite the inclusion of anti-alienation clauses. *See In Re Witlin,* 640 F.2d 661 (5th Cir.1981); *In re Baviello,* 12 B.R. 412 (Bkrtcy.E.D.N.Y.1981). The rationale of both courts was premised on the notion that the complete right of withdrawal destroyed the spendthrift trust exception provided by Section 541(c)(2). *Witlin,* 640 F.2d at 663. *See also, In re Watson,* 13 B.R. 391 (Bkrtcy.M.D.Fla.1981) (debtor's interest in a cooperative investment plan, which was qualified under ERISA, was not insulated from the trustee because of the complete termination right enjoyed by the debtor).

In accordance with the above principles, a Bankruptcy Court in Iowa recently held that a debtor's interests in a qualified pension plan was not insulated from the trustee because of the debtor's dominion and control over the corpus. *In re Graham,* 24 B.R. 305, 314 (Bkrtcy.N.D.Iowa 1982). In *Graham,* the debtor was the sole shareholder, director, and officer of a professional corporation. During the course of the debtor's employment, the corporation contributed $150,000.00 to a qualified ERISA pension plan. The plan contained the necessary anti-alienation clause. Subsequently, the debtor filed a Chapter 7 petition. The court rejected the debtor's contentions that his interests in the plan was excepted pursuant to Section 541(c)(2). The court noted that the traditional definition of spendthrift trust did not include a situation where the settlor, beneficiary, and trustee were one and the same person. *Id.* at 310–11. In reaching its decision, the *Graham* court rejected the formalities of the trust arrangement to obtain an equitable result. *Accord In re Klayer,* 20 B.R. 270 (Bkrtcy.W.D.Ky. 1981) (qualified ERISA pension plan includable in a Chapter 7 estate where settlor, beneficiary and trustee were the same person).

The defendants cite *In re Turpin,* 644 F.2d 472 (5th Cir.1981) and *In re Parker,* 473 F.Supp. 746 (W.D.N.Y.1979) for the proposition that qualified ERISA pension plans are immune from the reach of a Chapter 7 trustee. This court finds *Turpin* and *Parker* to be inapplicable to the present situation because in each case the debtor had filed a petition under Chapter VII of the prior Bankruptcy Act. As mentioned previously, the Code's definition of property is much more expansive than that of former Section 70(a)(5) of the Bankruptcy Act. The intention of Congress in enacting Section 541(a)(1) was to eliminate the emphasis of non-bankruptcy law and to create a much broader definition of property than that provided under the Act. Accordingly, the Legislative History reveals that the Section 541(c)(2) exception was to apply only to spendthrift trusts.

Defendants cite the case of *Clotfelter v. Ciba-Geigy Corp. (In re Threewitt),* 24 B.R. 927 (D.C.D.Kan.1982) (hereinafter referred to as *Clotfelter*) to support the proposition that Section 541(c)(2) does not pertain only to spendthrift trusts. In *Clotfelter,* the debtor participated in a contributory type pension plan which was qualified under ERISA. The debtor subsequently filed a petition under Chapter 7. The trustee sought turnover of the corpus of the plan even though the debtor was only partially vested. Under the terms of the plan in *Clotfelter,* the debtor had a virtually unlimited right to withdraw the corpus of the trust. The District Court, reversing the Bankruptcy Court, held that Section 541(c)(2) was not limited to spendthrift trusts. *Id.* at 929. The rationale of the District Court was centered on two principles: (1) that Congress did not explicitly include spendthrift trust in Section 541(c)(2), and (2) that under non-bankruptcy law creditors could not reach a debtor's interest in a qualified ERISA plan.

This court does not find the District Court's analysis in *Clotfelter* to be persuasive. The Legislative History behind the enactment of Section 541(c)(2) explicitly referred to the exception of only spendthrift trusts. *See* text *supra.* Consequently, in light of the Legislative History and prior case law interpreting Section 541(c)(2), the District Court's interpretation is overly broad. Additionally, the District Court ignores the distinction between a trustee's turnover order and a creditor's garnishment action as stated by the Supreme Court in *Kokoszka v. Belford,* 417 U.S. 642, 650–51, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974) (prior Bankruptcy Act did not limit bankruptcy trustee's right to treat tax refund as property of debtor's estate).

In the case at bar, both the debtor (an employee) and NL Industries (the employer) contributed to the pension plan administered by Metropolitan. The debtor contributed $2,000.00 to the pension plan and has a right to withdraw at any time his contribution plus 5% accumulated interest (computed from January, 1976). Early withdrawal,

however, causes a forfeiture of the deferred retirement benefits contributed by NL Industries.

This court finds that the pension plan herein does not satisfy the definition of a spendthrift trust, as established in Illinois. Since the debtor can reach the pension plan contributions at any time, the plan does not comport with a spendthrift trust's prohibition against voluntary alienation of a trust's corpus. While realizing that a turnover of the pension plan would cause a forfeiture of the debtor's deferred retirement benefits and that the forfeiture evidences a lack of dominance and control on behalf of the debtor, this court nevertheless finds that the weight of the evidence indicates that the pension plan in question is not a traditional spendthrift trust as contemplated by Congress under Section 541(c)(2). Consequently, this court finds that the pension plan is property of the debtor's estate pursuant to Section 541(a)(1). This court does not believe a per se rule which would except ERISA plans from being included in a debtor's estate would satisfy the two-fold purposes of the Bankruptcy Code as stated by the Supreme Court in *Burlingham v. Crouse,* 228 U.S. 459, 473, 33 S.Ct. 564, 568, 57 L.Ed. 920 (1913) (the two-fold purposes being the conversion of the debtor's estate into cash for distributing to listed creditors and the provision of an unencumbered fresh start to the debtor).

To demonstrate this point, this court needs only to refer to a *Graham, supra,* type of situation where a debtor has contributed a large amount of money to a qualified ERISA plan. If the hypothetical debtor were to file a subsequent Chapter 7 petition then, under the defendants' line of reasoning, the debtor's contributions would be immune from his creditors. This result would defeat one of the prime purposes of the Code, which is the marshalling of the debtor's assets to his creditors in satisfaction of their claims. Moreover, Section 541(a) was intended to be broad. Consequently, enlarging the scope of Section 541(c)(2) would dilute the intended application of Section 541(a). Further, one can inferentially conclude that since Congress created a separate exemption, for pension plans under Section 522(d)(10)(E), Congress did not intend that the Section 541(c)(2) exception be extended to ERISA plans. *See Regan v. Ross,* 691 F.2d 81, 86 (2d Cir.1982).

With respect to the profit-sharing plan under which FJNB is trustee, the debtor has a right to withdraw the corpus at any time. Even though the profit-sharing plan is a non-contributory plan (i.e. NL Industries made all contributions), the crucial factor is the debtor's unqualified right of withdrawal. Consequently, this court holds that the profit-sharing plan is not a traditional spendthrift trust as contemplated by Congress in enacting Section 541(c)(2) and thus is property of the estate pursuant to Section 541(a)(1).

Defendants argue that if this court allows the trustee to reach the debtor's interests in the profit-sharing and pension plans, both plans would be disqualified from receiving favorable tax treatment under Internal Revenue Code Section 401(a)(13). This result, it is argued, would harm thousands of employees currently employed by NL Industries. In further support of this argument, defendants offer as persuasive authority a recent Private Letter Ruling (81–31020 May 5, 1981) issued by the Internal Revenue Service. Private Letter Ruling 81–31020 indicated that a Bankruptcy Court Order which directed a pension plan to turnover a specified percentage of a retiree's monthly benefits to a trustee under a Chapter 13 case, would cause disqualification of the plan under the tax provisions of Internal Revenue Code Section 401(a)(13).

■ Addressing this argument, this court notes that ERISA Section 1144(d) provides in relevant part that "Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair or supercede any law of the United States. . . ." 29 U.S.C. § 1144(d) (1979). Since this court has ruled that the ERISA plans in question do not fall under the exceptions permitted by Section 541(c)(2), the normal anti-alienation requirements of ERISA conflict with Section

541(c)(1)(A) of the Bankruptcy Code. Section 541(c)(1)(A) provides: "Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision—(A) that restricts or conditions transfer of such interest by the debtor;" Consequently, this court holds that to the extent that the provisions of the Bankruptcy Code and ERISA conflict, Section 541(c)(1)(A) implicitly amends the normal anti-alienation provisions of ERISA. *See Regan v. Ross,* 691 F.2d 81, 87 (2d Cir.1982) ("to the extent Congress evidenced clear intent to include pension benefits in the property of a Chapter 13 estate" —a matter which the *Ross* court found to exist in an ERISA situation similar to the one before this court—"it necessarily amended § 401(a)(13) and applicable Treasury Regulations accordingly"). *See also Clotfelter v. Ciba-Geigy Corp. (In re Threewitt),* 20 B.R. 434, 439 (Bkrtcy.D.Kan. 1982), *rev'd* 24 B.R. 927 (D.Kan.1982). Additionally, this court is not bound by the private letter ruling mentioned previously, 26 U.S.C. § 6110(i)(3) (1976), and in any event, this court does not agree with the position taken by the Internal Revenue Service therein. *See Regan v. Ross,* 691 F.2d at 87. Consequently, this court holds that an order by a bankruptcy court directing a pension plan to pay over a debtor's interest in an ERISA plan to a Chapter 7 trustee does not disqualify a plan from receiving favorable tax treatment pursuant to Internal Revenue Code Section 401(a)(13).

Moreover, this court recognizes that explicit exceptions to the anti-alienation provisions of ERISA plans have been carved out by courts in several areas, such as child support and alimony payments. *See American Telephone & Telegraph Co. v. Merry,* 592 F.2d 118, 121 (2d Cir.1979); *Cody v. Riecker,* 594 F.2d 314, 315 (2d Cir.1979). Another exception to the anti-alienation provision is found on the face of Internal Revenue Code Section 401(a)(13), which allows a "voluntary and revocable assignment of not to exceed 10 percent of any benefit payment...". *See In re Wood,* 23 B.R. 552, 559–60 (Bkrtcy.E.D.Tenn.1982).

Defendant's last argument is that if Section 541(c)(2) does not serve to except the pension plans in question, Section 522(b) will exempt them. Section 522(b)(2)(A) provides in relevant part that "Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate ... any property that is exempt under Federal law ... or state or local law that is applicable..." 11 U.S.C. § 522(b)(2)(A) (Supp. IV 1980).

Illinois, however, has chosen to provide exemptions for debtors other than those provided in the Code. Ill.Rev.Stat. ch. 110 § 12–1201 (effective July 15, 1982). Pursuant to the exemption provisions of Illinois, Section 12–1001(g)(5) exempts a payment under any pension plan "to the extent necessary for the support of the debtor and any dependent of the debtor." Ill.Rev.Stat. ch. 110 § 12–1001(g)(5) (effective July 15, 1982).

In the case at bar, the debtor is 56 years old and presently receives a very small income. Furthermore, at the time of his petition, the debtor had scheduled liabilities in excess of $32,000.00 and scheduled assets of less than $1,000.00. Moreover, the debtor's interest in the retirement plans in question approximates $8,000.00.

The record and pleadings, however, present conflicting information about the debtor's representation by counsel in this adversary proceeding. Moreover, the record also presents conflicting evidence with respect to the debtor's wishes to seek exemption of his interests in the ERISA plans. Consequently, this court does not have sufficient evidence to rule on the second issue herein, i.e. whether Section 522(b) (by operation of the Illinois exemptions) exempts all, or a portion of, the debtor's interest in the ERISA plans. The parties are to institute an evidentiary hearing, at which the debtor can present evidence of his financial condition and be given an opportunity to seek exemption of his interests in the ERISA plans. *See* 4 *Collier on Bankruptcy* § 541.06, at 541–26 (15th ed. 1982). (An

individual debtor or a dependent of the debtor must claim the exemptions available under Section 522 in order to have it effective. Otherwise, the exemptible property will remain property of the estate.)

The defendants are to prepare a draft order in accordance with this opinion with five (5) days.